UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUANDA SIMONE BROWN, | : | CIVIL NO: 3:15-CV-01820 |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| BANK OF AMERICA, N.A. AS | : | |
| SUCCESSOR BY MERGER TO | : | |
| LASALLE BANK N.A. AS TRUSTEE | : | |
| FOR CERTIFICATE-HOLDERS OF | : | |
| BEAR STEARNS ASSET-BACKED | : | |
| SECURITIES I LLC, ASSET-BACKED | : | |
| CERTIFICATES, SERIES 2007-HE 2, | : | |
| | : | |
| Defendant | : | |
| | : | |

## REPORT AND RECOMMENDATION

### I.  Introduction.

The plaintiff, Quanda Simone Brown, brings claims under the Truth in
Lending Act (TILA), 15 U.S.C. § 1601, *et seq*., and the Fair Debt Collection
Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*., as well as a claim that she titles
as "identity theft."  Her claims relate to her mortgage and state foreclosure
proceedings.  Currently pending is the defendant's motion to dismiss Brown's
amended complaint.  For the following reasons, we recommend that the Court
grant the motion to dismiss the amended complaint, but we recommend that it
grant Brown limited leave to file a second amended complaint.

## II.  Background and Procedural History.

Brown began this action in September of 2015.  After a case management conference, Brown was granted leave to file an amended complaint, and her amended complaint was filed on December 8, 2015.

### A.  Brown's Amended Complaint.

The amended complaint names one defendant: "Bank of America, N.A. as Successor by Merger to LaSalle Bank N.A. as Trustee for Certificate-Holders of Bear Stearns Asset-Backed Securities I LLC, Asset-Backed Certificates, Series 2007-HE2." *Doc. 14* at 1.  As the defendant contends that its proper name is "U.S Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Bear Stearns Asset Backed Securities I Trust 2007-HE2, Asset Backed-Certificates, Series 2007-HE2" and it refers to itself as "US Bank," *see doc. 15* at 1, we will refer to the defendant as "US Bank."  The amended complaint contains three counts.  Count I is a TILA claim.  Count II is a FDCPA claim.  And Count III is a claim purportedly for identity theft.

Although the amended complaint is difficult to understand, we attempt to summarize Brown's allegations and contentions.[1]  Because Brown breaks up her factual allegations into sections regarding each of her claims, we do the same.

## 1. Allegations Regarding Brown's TILA Claims.

Brown entered into a mortgage[2] that was recorded in Monroe County, Pennsylvania, on September 18, 2006.  The mortgage secured a promissory note payable to National City Mortgage Company, a subsidiary of National City Bank, in the amount of $300,000.  According to Brown, US Bank[3] failed to provide her

---

[1]  In various places in the amended complaint, Brown refers to herself using masculine pronouns.  We know from the telephonic case management conference, that Brown is a female.  Brown's father, however, has helped her with this case, which may account for the use of masculine pronouns.  Also, at times, Brown refers to herself in the plural, *see doc. 14* at 3, and to "each of the plaintiff[s]," *id.* at 7, but Brown is the only plaintiff.  Also, at times, Brown refers to the defendant in the plural, see *doc. 14* at 6, and refers to "other defendants" *id.* at 7, but US Bank is the only defendant.

[2]  At times, Brown refers to this document as a trust deed, but other times she refers to it as a mortgage.  A trust deed is "[a] deed conveying title to real property to a trustee as security until the grantor repays a loan." *Black's Law Dictionary* 476 (9th ed. 2009).  "This type of deed resembles a mortgage." *Id.*  For consistency and ease of reference, we will refer to the document as a mortgage.

[3]  Although US Bank was not the mortgagee at the time the mortgage was executed, US Bank contends that it is a creditor of Brown, by which we understand US Bank to be asserting that it was either assigned the mortgage at some point or that it is a successor to an entity that was assigned the mortgage.  For ease of reference, we refer to the mortgagee throughout as US Bank.

with "the appropriate form of written notice published and adopted under the provisions" of the TILA or "a comparable written notice of the rights of the plaintiff, that was properly completed by the creditor, and otherwise complied with all statutory requirements regarding the notice." *Doc. 14* at 3.

US Bank attempted to foreclose on Brown's property under the mortgage. The foreclosure complaint was filed in the Court of Common Pleas of Monroe County on October 20, 2010.[4] The Court of Common Pleas of Monroe County entered a judgment of foreclosure on June 7, 2013.[5] Finding that Brown failed to

---

[4]  US Bank submitted a copy of the Monroe County Court of Common Pleas docket sheet from the foreclosure action, the foreclosure complaint, a notice of a writ of execution, and a notice of a sheriff's sale that was scheduled for September 24, 2015. *See Docs. 16-6, 16-2*, *16-3*, and *16-4*. The Court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2). The docket and documents in Brown's state foreclosure action are public records of which we can take judicial notice. *See Wilson v. McVey*, 579 F. Supp. 2d 685, 688 (M.D. Pa. 2008) (taking judicial notice of court docket); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (stating that court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity"). US Bank asserts that the sheriff's sale that was scheduled for September 24, 2015, was postponed because Brown filed for bankruptcy on September 23, 2015. *Doc. 16* at 9. Bankruptcy Judge Thomas dismissed Brown's bankruptcy case on November 13, 2015, because Brown failed to file required documents in that case. *See Doc. 16* in *In re Brown*, 5:15-bk-04084-JJT (Bankr. M.D. Pa.).

[5]  *See Doc. 16-6* (state docket sheet).

properly preserve any issues for appellate review, on June 10, 2014, the Superior

Court of Pennsylvania affirmed the Court of Common Pleas' judgment. *Bank of*

*Am. Nat. Ass'n v. Brown*, No. 1990 EDA 2013, 2014 WL 10917669, at *5 (Pa.

Super. Ct. June 10, 2014).

On August 7, 2015, Brown served a "notice to rescind" on US Bank, and she

attached a copy of that notice to her amended complaint.  In that notice, Brown

states, in pertinent part:

> Please be advised that I intend to rescind the purported
> obligation under the trust deed and note, a partial copy of which
> is attached for your reference.
> Please be advised that if you fail to sue me and re-
> establish the debt within twenty (20) days from the date of this
> notice, you will lose any security interests you might claim to
> have in my property, by this instrument.
> Furthermore, if you fail to return the property or money
> deposited by the promissory note and related costs, you may be
> subject to damages.
> Please also be advised that the three-day and three-year
> limitations do not apply as these time periods have been
> extended because the presumption of "equitable tolling" applies
> under the circumstances.  Please review the recent decision of
> the United States Supreme Court, Jesinoski v. Countrywide,
> 135 S.Ct. 790 (2015).
> I intend to sue you for the damages.

*Doc. 14-1* at 2.  US Bank did not respond to that notice.  According to Brown, US

Bank had a duty to, within 20 days, either sue her to re-establish the debt or return

her "money or property." *Doc. 14* at 4.[6]  US Bank did neither, and, thus, it is

Brown's contention that as of August 28, 2015, the mortgage and promissory note

were void and "did not exist." *Id*. at 4.  According to Brown, she served US Bank

with a notice that US Bank was in default and that she intended to sue. *See Doc.*

*14-1* at 4.

---

[6]  When referring to the 20-day period, Brown is apparently referring to 15 U.S.C.
§ 1635(b), which sets forth procedures for rescission and the effect of a proper
rescission under TILA:

> When an obligor exercises his right to rescind under subsection
> (a) of this section, he is not liable for any finance or other
> charge, and any security interest given by the obligor, including
> any such interest arising by operation of law, becomes void
> upon such a rescission.  Within 20 days after receipt of a notice
> of rescission, the creditor shall return to the obligor any money
> or property given as earnest money, downpayment, or
> otherwise, and shall take any action necessary or appropriate to
> reflect the termination of any security interest created under the
> transaction.  If the creditor has delivered any property to the
> obligor, the obligor may retain possession of it.  Upon the
> performance of the creditor's obligations under this section, the
> obligor shall tender the property to the creditor, except that if
> return of the property in kind would be impracticable or
> inequitable, the obligor shall tender its reasonable value.
> Tender shall be made at the location of the property or at the
> residence of the obligor, at the option of the obligor.  If the
> creditor does not take possession of the property within 20 days
> after tender by the obligor, ownership of the property vests in
> the obligor without obligation on his part to pay for it.

Nevertheless, according to Brown, US Bank continued with the foreclosure proceedings and subsequently foreclosed on her property.[7]  Brown alleges that in the state foreclosure action, US Bank "never produced evidence or proved any debt was owed." *Id*.  According to Brown, although US Bank has recorded a judgment lien, it has not sold the property.

In connection with the TILA claim, Brown seeks damages in the amount of the fair market value of her property, which she contends is $211,000; "the money deposited with the lender identified on the mortgage or trust deed lien in the amount of $300,000," and the costs and attorney's fees "associated with this action and defending against the foreclosure process in the amount of $15,000." *Doc. 14* at 5.

## 2.  Allegations Regarding Brown's FDCPA Claims.

Brown alleges that after the mortgage, which did not name or confer any power on US Bank, was recorded, US Bank began attempting to foreclose under the terms of the mortgage, as if it was the holder or in control of the note and mortgage.  According to Brown, US Bank "somehow acquired" her "personal and

---

[7]  As the docket sheet from the state foreclosure action shows that the judgment of foreclosure was entered on June 7, 2013, more than two years before Brown sent her notice of rescission on August 7, 2015, we assume that Brown means that US Bank continued with efforts to sell the property pursuant to the foreclosure judgment.

banking information" and used that information for its own personal gain without any permissible purpose. *Doc. 14* at 7.

Brown allges that "[w]ithin the previous twelve months, the defendant began sending written communication to the plaintiff stating that it was representing various parties having rights under the same trust deed, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiff's property." *Id*. Brown asked US Bank to verify "that these parties [it] was supposed to have been representing, whose names [it] was using, were aware of [its] actions." *Id*. US Bank did not respond. Brown explained that she made such request because none of the parties referenced by US Bank were named in the mortgage. Brown also asked US Bank to explain how it had obtained her personal and private banking, financial, and identifying information. US Bank did not respond to Brown's request. According to Brown, the purported debt that US Bank was attempting to collect was "not a debt held or collected under the name of the defendant." *Id*.

Brown alleges that US Bank made false representations (1) that it was the holder of the note; (2) that it had the right to foreclose against her property under the mortgage; (3) that it had certain legal rights under the mortgage; (4) that it had the right to foreclose if Brown failed or refused to provide additional "credit,

banking, financial, personal and other identifying information" or she failed or refused to agree to make regular payments; (5) that if she failed to provide further information and money, it would sell her property at a public auction; and (6) that her "credit accounts were sold to innocent purchase[rs] for value." *Id*. at 7-10.

According to Brown, US Bank did not have her "typical credit information," such as her social security number, her date of birth, or "other banking information that a creditor would normally be expected" to have. *Id*. at 8-9. Brown alleges that US Bank "requested certain financial disclosures" from her "claiming that the disclosures would persuade [it] to cease its foreclosure actions provided that money was paid by the plaintiff to the defendant or its privies." *Id*. at 8.

Brown also alleges that US Bank used the foreclosure process "for the purpose of engaging in a scheme that aims to conceal the identity, source, and destination of illicitly-obtained money, specifically, the plaintiff's promissory note." *Id*. at 8. According to Brown, US Bank acquired a forged or counterfeit copy of the promissory note, and it employed "a complex scheme, including what has become known recently as 'securitization, and then assignments, trusteeships and other counter parties or affiliates such as 'serving agents' to obscure who initially received the money." *Id*. at 8. The parties involved in this scheme, Brown alleges, have been compensated in a number of different ways, such as by "removing the liability from accounting records and obtaining tax benefits from the

9

United States, sustaining the illusion of solvency for pension funds of those government officers who participate in the scheme, including judges and attorneys and clerks of the court." *Id*. Actions were taken under this scheme "so as to conceal who did what and when." *Id*.

According to Brown, US Bank used a "false or fictitious name" or a "name other than" its "true name" in its collection efforts; it falsely represented the name of the creditor to whom the alleged debt is owed. *Id*. at 9.  Brown alleges that despite several written requests by her, US Bank refused to identify its owners, principals, or the interest it had in her property.  Brown further alleges that US Bank failed to provide an accounting of its claim, and, instead, simply demanded money in exchange for not foreclosing on her property providing only copies of records that anyone could obtain from the county recorder's office.  She also alleges that US Bank threatened to undertake a foreclosure action when it had no right to do so, and it failed to provide her with "validation of debt within five business days of [her] contacting [it]." *Id*. at 10.

Further, according to Brown, US Bank sent her "written communications that were made to look like or falsely represent documents authorized, issued, or approved by a court, official, or agency of the United States or the state, by using words that would give a false impression of the document's source, authorization, or approval." *Id*. at 9.

10

Brown claims that US Bank violated multiple sections of the FDCPA, and she seeks statutory damages, actual damages, and costs and attorney's fees.

### 3.  Allegations Regarding Brown's Identity-Theft Claim.

Brown alleges that, beginning in August of 2012 and continuing through the present, US Bank and others affiliated with or apparently working for US Bank contacted her and threatened to take her home and money unless she provided certain financial, personal, banking, and identifying information.  Brown asserts that these communications are attached to her amended complaint as Exhibit B, which consist of six documents: (1) a letter from Bank of America to a Yvette Jean-Bart dated January 18, 2011, responding to correspondence from Bart and stating that it could not respond to her request because it could not identify the loan number associated with her correspondence; (2) another letter from Bank of America to Jean-Bart, this one dated February 1, 2011, responding to correspondence from Bart and again stating that it could not respond to her request because it could not identify the loan number associated with her correspondence but listing a loan number and Brown's name in the "Re" line of the letter; (3) a letter from Brown to National City Mortgage Co., EMC Mortgage Corporation, Bank of America, and Chase Home Finance, LLC dated April 30, 2013, requesting information about her promissory note and mortgage; (4) a letter from Chase to

Brown dated October 24, 2014, responding to her request for mortgage assistance, stating that her application is incomplete, and listing forms and documents that she may need to provide to complete her application for mortgage assistance; (5) a letter from Chase to Brown dated November 14, 2014, notifying Brown that the servicing of her mortgage will transfer from Chase to Specialized Loan Servicing, LLC (SLS) effective December 1, 2014; and (6) a letter from SLS to Brown dated June 22, 2015, responding to her application for a "foreclosure prevention option," stating that it is unable to offer her a "[r]etention option at this time"; listing the options that it evaluated her for and the results of such evaluation; advising her how to request a second review; providing certain disclosures including a disclosure under the Fair Credit Reporting Act that it obtained and used her credit report and her credit score in making its decision; listing certain information relevant to her loan; and including a "Foreclosure Prevention Change of Intent Form," which includes boxes to check and additional data that would be needed if she "would like to be considered for other foreclosure prevention options." *Doc. 14-2* at 2-29.

Brown alleges that US Bank made inquiries of her credit report without a permissible purpose, "falsely presented itself and impersonated itself" to her to obtain her property, obtained public records and used such to create other records that it then used to convince the state court to participate in a public auction of her

12

home, failed to provide her with its document-retention policy despite her request for such, and failed to provide an explanation about how her private information would be used. *Id*. at 14.  According to Brown, US Bank deceived her into disclosing her personal information and then it used that information for its own financial gain and for purposes not permitted by law or consented to by her.  She alleges that US Bank "has or intends to" sell or trade her personal information to others and to file claims with the Internal Revenue Service.  She also alleges that US Bank used her personal information to sell her property at a public auction.[8]

In connection with her identity-theft claim, Brown seeks damages in the amount of the fair market value of her property, which she contends is $211,000; "the money deposited with the lender identified on the mortgage or trust deed lien in the amount of $300,000," the costs and attorney's fees "associated with defending against the foreclosure process in the amount of $15,000," and damages for the purported unauthorized use of her private information, which she estimates will exceed $250,000. *Doc. 14* at 15-16.

---

[8]  This allegation conflicts with Brown's earlier allegation in connection with her TILA claim that although US Bank has recorded a judgment lien, it has not sold the property.

13

**B.  Pending Motion.**

Currently pending is US Bank's motion to dismiss the amended complaint.

Although US Bank mentions only Fed.R.Civ.P. 12(b)(6) in its motion to dismiss,

because it seeks dismissal of one claim on the basis of the *Rooker-Feldman*

doctrine, which raises a question of subject-matter jurisdiction, we construe the

motion to dismiss to also be, in part, a motion under Fed.R.Civ.P. 12(b)(1) to

dismiss for lack of subject-matter jurisdiction.  Brown submitted an affidavit in

connection with her brief in opposition to the motion to dismiss. *See Doc. 18* at 14-

16.  As we are addressing a Fed.R.Civ.P. 12(b)(6) motion and, in part, a 12(b)(1)

motion that raises a facial attack on subject-matter jurisdiction, we do not consider

Brown's affidavit.

**III.  Motion to Dismiss.**

**A. Standards Under Fed.R.Civ.P. 12(b)(1) and 12(b)(6).**

Rule 12(b)(1) permits the dismissal of an action for lack of subject-matter

jurisdiction.  Challenges to subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1)

may be "facial" or "factual." *Turicentro, S.A. v. American Airlines, Inc.,* 303 F.3d

293, 300 n.4 (3d Cir. 2002).  A facial attack contests the sufficiency of the

pleadings. *Id.*  In reviewing a facial attack, the court considers, in the light most

favorable to the plaintiff, the allegations in the complaint and any documents

referenced and attached to the complaint. *Gould Electronics, Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000).

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic

15

recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint must be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must
> plead to state a claim.' Second, the court should identify

16

allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and " 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## B. TILA.

"Congress enacted TILA in 1968 to promote the 'informed use of credit.' " *Sherzer v. Homestar Mortgage Servs.*, 707 F.3d 255, 255 (3d Cir. 2013) (quoting 15 U.S.C. § 1601(a)). "To achieve this goal, TILA sought 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more

17

readily the various credit terms available to him and avoid the uninformed use of credit.' " *Id.* A debtor may sue for damages for violations of TILA. *See* 15 U.S.C. §§ 1640(a) & 1640(e). Further, "when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411 (1998) (citing 15 U.S.C. § 1635).

US Bank contends that Brown's TILA claims are barred by the *Rooker-Feldman* doctrine and that the TILA claims are untimely. We address the *Rooker-Feldman* argument first because "[a] finding that *Rooker–Feldman* bars a litigant's federal claims divests a District Court of subject matter jurisdiction over those claims." *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003). And "[f]ederal courts must determine that they have jurisdiction before proceeding to the merits." *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

### 1. Brown's TILA Claims Are Not Barred by the *Rooker-Feldman* Doctrine.

The *Rooker-Feldman* doctrine embodies the principles set forth in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Section 1257 of Title 28 of the United States Code confers on the United States Supreme Court appellate jurisdiction to review

final judgments of the states' highest courts.   Congress had not "conferred a

similar power of review on the United States District Courts," *Desi's Pizza,* 321

F.3d at 419, and the *Rooker-Feldman* doctrine is the doctrine that, by negative

implication, inferior federal courts lack subject-matter jurisdiction to review final

judgments of the states' highest courts. *E.B. v. Verniero*, 119 F.3d 1077, 1090 (3d

Cir. 1997).   Courts "have interpreted the doctrine to encompass final decisions of

lower state courts" as well. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank

Products Liab. Litig.*, 134 F.3d 133, 143 (3d Cir. 1998).   "Under the *Rooker-

Feldman* doctrine, a district court is precluded from entertaining an action, that is,

the federal court lacks subject matter jurisdiction, if the relief requested effectively

would reverse a state court decision or void its ruling." *Taliaferro v. Darby Twp.

Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006).

Although the Supreme Court applied the doctrine only twice to dismiss an

action for lack of subject-matter jurisdiction—in *Rooker* and in *Feldman*—lower

courts had broadly interpreted the *Rooker-Feldman* doctrine "to extend far beyond

the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of

federal-court jurisdiction, concurrent with jurisdiction exercised by state courts,

and superseding the ordinary application of preclusion law pursuant to 28 U.S.C.

§ 1738." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 & 287

(2005).  For example, the Third Circuit broadly interpreted the *Rooker–Feldman*

doctrine to divest the district court of jurisdiction '"under two circumstances: first, if the [federal] claim was 'actually litigated' in state court prior to the filing of the federal action or, second, if the [federal] claim is 'inextricably intertwined with [the] state adjudication,' meaning that 'federal relief can only be predicated upon a conviction that the state court was wrong.' " *Walker v. Horn*, 385 F.3d 321, 329 (3d Cir. 2004) (quoting *Desi's Pizza,* 321 F.3d at 419).

In *Exxon Mobil*, the Supreme Court rejected "such an expansive application of the *Rooker-Feldman* doctrine," and it held that the doctrine is "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil,* 544 U.S. at 284).  The Court clarified that "[w]hen there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court." *Exxon Mobil,* 544 U.S. at 292.  Rather, "[d]isposition of the federal action once the state-court adjudication is complete, [is] governed by preclusion law," but "[p]reclusion, of course, is not a jurisdictional matter." *Id.* at 293.  In other words, "a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment," but the federal court does not lack "subject-matter jurisdiction simply because a party attempts to litigate in

federal court a matter previously litigated in state court." *Id*. Thus, "[i]f a federal plaintiff 'presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.' " *Id*. (quoting *GASH Associates v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

Following *Exxon Mobile,* the Third Circuit nevertheless, at times, continued to apply the *Rooker-Feldman* doctrine using the standards it had before *Exxon Mobile. See In re Knapper*, 407 F.3d 573, 575, 580-581 n.15 (3d Cir. 2005) (holding that the bankruptcy court lacked subject-matter jurisdiction under *Rooker-Feldman* to void foreclosure judgments and the resulting sheriff's sale of two parcels of real property and while mentioning *Exxon Mobile* in a footnote, applying the *Rooker-Feldman* test as formulated before *Exxon Mobile*, i.e., that *Rooker-Feldman* applies when a federal claim was actually litigated in state court or when the federal claim is inextricably intertwined with the state-court adjudication, which occurs when "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment") (quoting *Walker*, 385 F.3d at 330); *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (holding, without mentioning *Exxon Mobile* and using its pre-*Exxon Mobile*

21

formulation of *Rooker-Feldman*, that a claim seeking rescission of a loan under TILA was barred by *Rooker-Feldman*).  In *Great Western Mining,* however, the Third Circuit recognized that *Exxon Mobile* had rejected its previous "expansive application of the *Rooker-Feldman* doctrine," and it cautioned against relying on its " 'pre-*Exxon* formulation of the *Rooker-Feldman* doctrine,' which focused on whether the state and federal suits were 'inextricably intertwined.' " 615 F.3d at 166 & 169 (quoting *Gary v. Braddock Cemetery*, 517 F.3d 195, 200 n.5 (3d Cir. 2008)).  The Third Circuit explained that "[t]he phrase 'inextricably intertwined' does not create an additional legal test or expand the scope of *Rooker-Feldman*." *Id*. at 170.  It " 'has no independent content.  It is simply a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobile*.' " *Id*. (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005)).

"Breaking down the holding of *Exxon Mobil*," the Third Circuit "conclude[d] that there are four requirements that must be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Id*. at 166 (internal quotation marks omitted) (quoting *Exxon Mobile*, 544 U.S. at 284).  Here, the first and third requirements are met because Brown lost in the state foreclosure

action and the foreclosure judgment was entered before Brown filed this federal
action. Thus, we turn to the second and fourth requirements, which "are the key to
determining whether a federal suit presents an independent, non-barred claim." *Id*.
at 166.

   "The second requirement—that a plaintiff must be complaining of injuries
caused by a state-court judgment—may also be thought of as an inquiry into the
source of the plaintiff's injury." *Id*. "When . . . a federal plaintiff asserts injury
caused by the defendant's actions and not by the state-court judgment, *Rooker-*
*Feldman* is not a bar to federal jurisdiction" "even if [the federal action] asks the
federal court to deny a legal conclusion reached by the state court" and "even
though the injuries of which the plaintiff complain[s] helped to cause the adverse
state judgment." *Id*. at 167-168. "A useful guidepost is the timing of the injury,
that is, whether the injury complained of in federal court existed prior to the state-
court proceedings and thus could not have been 'caused by' those proceedings."
*Id*. at 167. But "[e]ven if the plaintiff would not have suffered any damages from
the [defendant's actions] absent the state-court order, her claim [is] not barred by
*Rooker Feldman*," if "'her claim for damages is based on an alleged independent
violation of her . . . rights . . .which caused the adverse state decision.'" *Id*. at 172
(quoting *Brokaw v. Weaver*, 305 F.3d 660, 667 (7th Cir. 2002)).

Here, Brown is not claiming that the state-court decision violated TILA.

Rather, Brown is complaining about US Bank's alleged failure to provide her with

certain disclosures and its continuing with the foreclosure proceedings despite her

purported rescission of the loan.   Although Brown allegedly suffered damages as

result of the foreclosure judgment in state court, her claim is based on US Bank's

actions, both before and after the foreclosure judgment.   As Brown is claiming that

US Bank was the source of her injuries, the second requirement of *Rooker-*

*Feldman* is not satisfied here.

Nor is the fourth requirement of *Rooker-Feldman* satisfied in this case.   The

fourth element—that the plaintiff is inviting the federal court to review and reject

the state-court judgment—is "closely related" to the second requirement.   *Id*. at

168.   "Yet, a federal plaintiff who was injured by a state-court judgment is not

invariably seeking review and rejection of that judgment." *Id*.   "Prohibited

appellate review 'consists of a review of the proceedings already conducted by the

[state] tribunal to determine whether it reached its result in accordance with law.' "

*Id*. at 169 (quoting  *Bolden v. City of Topeka, Ks.,* 441 F.3d 1129, 1143 (10th Cir.

2006)).   But a plaintiff who is merely seeking to litigate in federal court a matter

previously litigated in state court is not seeking appellate review of the state-court

judgment "as long as the 'federal plaintiff present[s] some independent claim,'

even if that claim denies a legal conclusion reached by the state court." *Id*. (quoting

24

*Exxon Mobile*, 544 U.S. at 293).  "When 'the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment,' the second, or federal, court 'is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.' " *Id.* (quoting *Bolden,* 441 F.3d at 1143).

"In both *Rooker* and *Feldman,* the plaintiffs sought to have the state-court decisions undone or declared null and void by the federal courts." *Id*. at 173.  Here, in contrast, Brown is not asking this Court to declare the state-court judgment null and void.  Rather, she is seeking only damages.  Before this Court could award some of the damages that Brown seeks, it would have to find that US Bank did not have a right to seek foreclosure, a conclusion that is at odds with a conclusion reached by the state court, but "there is a difference between asking the district court to undo a state court judgment and asking the district court to find that a state court judgment was entered erroneously as a result of defendants' actions." *Duffy v. George*, No. CV 14-02111, 2015 WL 9460135, at *8 (M.D. Pa. Dec. 23, 2015).  In order to award Brown damages, this Court need not reject or overrule the state-court judgment. *See Great Western*, 615 F.3d at 173 ("Here, while Great Western's claim for damages may require review of state-court judgments and even a conclusion that they were erroneous, those judgments would not have to be

rejected or overruled for Great Western to prevail.").  Thus, the fourth requirement of *Rooker-Feldman* is not satisfied.

Because neither the second nor the fourth requirement of the *Rooker-Feldman* doctrine are satisfied here, this Court has subject-matter jurisdiction over Brown's TILA claims for damages.

### 2.  Brown's TILA Claims Should Be Dismissed.

Although we have subject-matter jurisdiction over Brown's TILA claims, those claims should nevertheless be dismissed.  Brown claims that US Bank violated TILA by failing to provide required disclosures at the closing and by continuing with foreclosure proceedings after she sent her notice of rescission. Brown's claim based on the failure to provide appropriate disclosures is barred by the statute of limitations, and her claim based on her purported rescission fails because she did not send her notice of rescission with the three-year period for doing so under TILA.

Most claims under TILA are subject to a one-year statute of limitations. 15 U.S.C. § 1640(e) ("Except as provided in the subsequent sentence, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation . . . .").  In limited circumstances, TILA provides for a

three-year statute of limitations. *Id.* ("Any action under this section with respect to any violation of section 1639, 1639b, or 1639c of this title may be brought in any United States district court, or in any other court of competent jurisdiction, before the end of the 3-year period beginning on the date of the occurrence of the violation."). Brown's claim that US Bank failed to provide appropriate disclosures at the closing, which occurred in September of 2006,[9] is barred by the statute of limitations, as this action was not commenced until September 18, 2015, nearly nine years after the closing.[10]

Brown's claim that US Bank failed to recognize her purported rescission notice, which she sent to US Bank on August 7, 2015, fails because a rescission notice must be sent within three years of the consummation of the loan transaction. "A loan is consummated for purposes of TILA when the loan is closed, with the execution of a note and mortgage, and a disbursement of loan proceeds." *In re Velardi*, 547 B.R. 147, 155 (Bankr. M.D. Pa. 2016). In this case, according to the allegations in the amended complaint, the loan closed in September of 2006.

---

[9] Brown alleges that the mortgage was recorded on September 18, 2006. The closing would have occurred near in time to when the mortgage was recorded.

[10] "[T]he statute of limitations contained in § 1640(e) is not jurisdictional and is therefore subject to equitable tolling." *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 505 (3d Cir. 1998). Although Brown argues that equitable tolling applies to her claim based on her notice of rescission, she does not argue equitable tolling as to her claim based on the lack of appropriate disclosures.

Under TILA, "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so." 15 U.S.C.A. § 1635(a).  Under this section, borrowers have an "unconditional right to rescind for three days, after which they may rescind only if the lender failed to satisfy the Act's disclosure requirements." *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015).  "But this conditional right to rescind does not last forever." *Id*.  "Even if a lender *never* makes the required disclosures, the 'right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first.'" *Id*. (italics in original) (quoting 15 U.S.C. § 1635(f)).  Section "1635(f) completely extinguishes the right of rescission at the end of the 3-year period," and TILA "permits no federal right to rescind, defensively or otherwise, after the 3-year period of §1635(f) has run." *Beach*, 523 U.S. at 412 & 419.

Brown did not exercise her right of rescission within three years of the consummation of the loan.  The consummation of loan was in September of 2006,

but Brown did not send her rescission notice until nearly nine years later—in

August of 2015.  Thus, Brown did not timely exercise her right to rescission.

Brown suggests, however, that the three-year limitation is subject to

equitable tolling because she was not aware of the rescission provision of TILA

until the Supreme Court's decision in *Jesinoski. See Doc. 14* at 2 (asserting that in

*Jesinoski*, the Court "ruled that the three year limit does not apply because of the

doctrine of equitable tolling, which has no affirmative defense").  Brown's reliance

on *Jesinoski* as supporting her equitable tolling argument is misplaced.  *Jesinoski*

merely addressed what a borrower must do to exercise the right of rescission, that

is, whether written notice is sufficient or whether a lawsuit is necessary.  The Court

in *Jesinoski* concluded that written notice was sufficient. 135 S.Ct. at 792

(concluding that "so long as the borrower notifies [the lender] within three years

after the transaction is consummated, his rescission is timely . . . The statute does

not also require him to sue within three years").  In *Jesinoski*, the borrowers sent

their written notice within three years of the consummation of their loan, and thus,

the Court in *Jesinoski* concluded that their TILA claim should not have been

dismissed. *Id*. at 793.  Contrary to Brown's suggestion, *Jesinoski* did not hold or

suggest that the three-year limitation on the right of rescission could be extended.

In fact, *Jesinoski* noted that in *Beach*, which "concerned a borrower's attempt to

rescind in the course of a foreclosure proceeding initiated six years after the loan's

consummation," it had concluded that that "there was 'no federal right to rescind, defensively or otherwise, after the 3–year period of § 1635(f) has run.' " *Id.* at 792 (quoting *Beach*, 523 U.S. at 417). Thus, *Jesinoski* does not support Brown's equitable-tolling argument.

The three-year limitation on the right of rescission is "an absolute bar to a cause of action if the right is not exercised within the three-year period." *Jacques v. Chase Bank USA, N.A.*, No. CV 15-548-RGA, 2016 WL 423770, at \*9 (D. Del. Feb. 3, 2016). In other words, the three-year limit on rescission is a statute of repose, not a statute of limitations. *In re Velardi*, 547 B.R. at 156 ("A claimed right to rescission under TILA is subject to a statute of repose; not a statute of limitations."). And the three-year period is not subject to equitable tolling. *Jacques,* 2016 WL 423770 at \*9 ("This three-year period is a statute of repose, rather than a statute of limitations, meaning that the right is extinguished after the three-year period passes and is not subject to equitable tolling."). Because Brown did not exercise her right of rescission within three years of the consummation of the loan and the three-year period is not subject to equitable tolling, Brown did not timely exercise her right to rescission. Thus, her claim for damages against US Bank based on US Bank's failure to recognize her purported rescission fails.

In sum, the Court should dismiss Brown's TILA claim based on US Bank's failure to provide proper disclosures at the closing because that claim is barred by

the statute of limitations, and it should dismiss Brown's claim that US Bank failed to stop the foreclosure proceedings after she sent her purported notice of rescission because Brown did not send her notice within three years of the closing.

### C. FDCPA.

"The FDCPA is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1171 n.1 (2013). It "authorizes any aggrieved person to recover damages from 'any debt collector who fails to comply with any provision' of the FDCPA." *Id.* (quoting 15 U.S.C. § 1692k(a)). In order to state a claim upon which relief can be granted under the FDCPA, a plaintiff must allege facts from which it can reasonably be inferred " 'that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.' " *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (quoting *Douglass v. Convergent Outsourcing,* 765 F.3d 299, 303 (3d Cir. 2014)).

US Bank moves to dismiss Brown's FDCPA claims on serval grounds: (1) it is a creditor, not a debt collector, and, therefore, the FDCPA does not apply to it; (2) most of Brown's claims are barred by the statute of limitations; and (3) to the

extent the claims are not barred by the statute of limitations, Brown's allegations fail to state a claim upon which relief can be granted.

### 1.  We Cannot Conclude at this Time that US Bank Is Not a Debt Collector.

The FDCPA generally applies only to "debt collectors"; "[c]reditors—as opposed to 'debt collectors'—generally are not subject to the FDCPA." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000).  Under the FDCPA, however, a "debt collector" includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). Given Brown's allegation that US Bank used a "false or fictitious name" or a "name other than" its "true name" in its collection efforts, *Doc. 14* at 9, she has sufficiently alleged that US Bank is a debt collector.

Moreover, although "[o]rdinarily, creditors are not considered debt collectors under the FDCPA," "an assignee of a loan 'may be deemed a "debt collector" if the obligation is already in default when it is assigned.' " *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 358 n. 2 (3d Cir. 2015) (quoting *Pollice,* 225 F.3d at 403).  In determining if a defendant is a "creditor" or a "debt collector," the focus is on the status of the debt at the time it was acquired. *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007).  "Admittedly, focusing

on the status of the debt when it was acquired overlooks the fact that the person

engaging in the collection activity may actually be owed the debt and is, therefore,

at least nominally a creditor." *Id.* "Nevertheless, pursuant to § 1692a, Congress

has unambiguously directed our focus to the time the debt was acquired in

determining whether one is acting as a creditor or debt collector under the

FDCPA." *Id.* The FDCPA does not define the term "default," but at least one way

to determine whether an account was in default is by "looking at the 'state of mind'

of the creditor to see whether the creditor considered the debt to be in default."

*Roberts v. NRA Grp., LLC*, CIV.A. 3:11-2029, 2012 WL 3288076, at *6 (M.D. Pa.

Aug. 10, 2012).

Here, Brown does not allege that she was in default under the mortgage

when US Bank acquired the mortgage.  In fact, she disputes that US Bank ever

even acquired an interest in the mortgage.  If, as she alleges, US Bank had no

interest in the mortgage, it was not a creditor.  But in any event, we note that the

state foreclosure complaint, which US Bank provided to the Court, was brought in

the name of Bank of America, not US Bank, and Bank of America alleged in the

foreclosure complaint that National City Mortgage assigned the mortgage to it and

that that mortgage assignment would be duly recorded on the Office of the

Recorder of Monroe County. *See Doc. 16-2.*  In light of this, it is reasonable to

infer at this early stage of the proceedings that the mortgage may have been in

default at the time US Bank acquired any interest in it, and, as such, US Bank falls with the definition of a debt collector.

## 2. Many of Brown's FDCPA Claims Are Barred by the Statute of Limitations.

US Bank contends that most of Brown's FDCPA claims are based on the foreclosure action and are barred by the statute of limitations.   Brown has not responded to this argument in her brief in opposition to the motion to dismiss, and we agree that any claims based on the foreclosure action or based on communications before the foreclosure action are barred by the statute of limitations.

The FDCPA contains a one-year statute of limitations:  "An action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).  Pleadings, including foreclosure complaints, are generally subject to the FDCPA. *Kaymark v. Bank of America*, 783 F.3d 168, 179 (3d Cir. 2015).  "When FDCPA claims are predicated upon improperly bringing debt collection litigation, the one-year limitations period begins to run—at latest—when the debtor is served with process." *Jones v. Inv. Retrievers, LLC*, No. 3:10-CV-1714, 2011 WL 1565851, at *3 (M.D. Pa. Apr. 25, 2011) (citing *Schaffhauser v. Citibank,* 340 F. App'x 128, 130–131 (3d Cir. 2009) (noting that courts are split on whether the limitations

34

period begins to run when the underlying collection action is filed or when the debtor is served in the underlying collection action and declining to decide that issue because under either approach the claims in that case were untimely)).

Here, the state foreclosure action was filed on October 20, 2010, and the docket in that case shows that Brown was served, at the latest, in early November of 2010. *Doc. 16-6.* Thus, to the extent that Brown's claims are based on the filing of the foreclosure action or communications preceding the foreclosure action, they are barred by the one-year statute of limitations.

The amended complaint is not clear about what the particular communications at issue stated or when they were sent, but given that they seem to focus on the opportunity for Brown to avoid foreclosure, they likely would have preceded the date when the final judgment of foreclosure was entered in the state case, which was June 7, 2013. *See Doc. 16-6.* Thus, any claims based on communications before the final judgment of foreclosure are barred by the one-year statute of limitations since Brown did not file the current action until September of 2015. Brown does, however, allege in her amended complaint that "[w]ithin the previous twelve months," US Bank sent written communications to her. *Doc. 14* at 7. Thus, we cannot say that all of Brown's FDCPA claims are barred by the statute of limitations.

### 3. As to Claims Not Barred by the Statute of Limitations, Brown Fails to State a FDCPA Claim Upon Which Relief Can Be Granted.

Brown claims that US Bank violated §§1692e(4) and 1692e(5) of the FDCPA. Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C.A. § 1692e. It then provides a non-exhaustive list of ways that a debt collector violates that provision including by making a "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action," § 1692e(4), or a "threat to take any action that cannot legally be taken or that is not intended to be taken." § 1692e(5). Brown also claims that the US Bank violated 15 U.S.C. §§ 1692g(a) and 1692g(b), which relate to validation of debts and which require a debt collector to provide certain information to the consumer and requires the debt collector to cease collection efforts under certain circumstances when the consumer disputes the debt.

Although Brown alleges in her amended complaint that "[w]ithin the previous twelve months," *id.*, US Bank sent written communications to her stating that it was representing various parties, she does not allege how those communications violated the FDCPA. Thus, she fails to state a claim upon which relief can be granted in that regard. *Kimmel v. Phelan Hallinan & Schmieg, PC*,

36

847 F. Supp. 2d 753, 770 (E.D. Pa. 2012) ("Should the Kimmels elect to amend their complaint, they must link each alleged violation of the FDCPA to the predicate factual allegations giving rise to the violation in order to state a claim under Fed.R.Civ.P. 8.").

Further, regardless of the statute of limitations, US Bank contends that Brown's allegations that US Bank failed to verify that the parties it was supposed to be representing were aware of its actions and to explain how it obtained her personal information fail to state a claim.  While 15 U.S.C. § 1692g(a) requires that a debt collector provide certain information to debtor, the nature of the information the debt collector is required to provide is limited.  Section 1692g (a) requires a debt collector to provide the following information to the consumer within five days of its initial communication with the consumer, unless the information is contain in the initial communication or the consumer has paid the debt:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain

verification of the debt or a copy of a judgment against the
consumer and a copy of such verification or judgment will be
mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request
within the thirty-day period, the debt collector will provide the
consumer with the name and address of the original creditor, if
different from the current creditor.

And 15 U.S.C.A. § 1692g(b) requires the debt collector to cease collection efforts

under certain circumstances when the consumer disputes the debt:

If the consumer notifies the debt collector in writing
within the thirty-day period described in subsection (a) of this
section that the debt, or any portion thereof, is disputed, or that
the consumer requests the name and address of the original
creditor, the debt collector shall cease collection of the debt, or
any disputed portion thereof, until the debt collector obtains
verification of the debt or a copy of a judgment, or the name
and address of the original creditor, and a copy of such
verification or judgment, or name and address of the original
creditor, is mailed to the consumer by the debt collector. . . .
Any collection activities and communication during the 30-day
period may not overshadow or be inconsistent with the
disclosure of the consumer's right to dispute the debt or request
the name and address of the original creditor.

Here, Brown's request for information about how US Bank obtained her

personal information and her request for verification that other parties knew what

US Bank was doing requested more than what a debt collector is required to

provide under the FDCPA.  Moreover, Brown did not allege that she sent her

requests for information with the 30-day period set forth in the FDCPA, and "[t]he

right to have a debt verified before collection efforts can continue is waived if

written notification is not sent within the thirty-day period." *Jones*, 2011 WL 1565851 at *6.  Thus, the amended complaint fails to state a claim upon which relief may be granted as to Brown's request for information.

### D.  Identity Theft.

Brown claims that the US Bank committed identity theft by soliciting personal information from her and then using that information in the state foreclosure action.  We conclude that the amended complaint fails to state a claim for identity theft upon which relief can be granted.

Although Brown has not pointed to the law under which she is bringing her identity-theft claim, to the extent she is relying on state law, her claim would be under 42 Pa. Cons. Stat. Ann. § 8315, which provides a private right of action for a violation of 18 Pa. Cons. Stat. § 4120.  Section 4120(a) provides that "[a] person commits the offense of identity theft of another person if he possesses or uses, through any means, identifying information of another person without the consent of that other person to further any unlawful purpose."  Section 4129(f), in turn, defines "identifying information" as "[a]ny document, photographic, pictorial or computer image of another person, or any fact used to establish identity, including, but not limited to, a name, birth date, Social Security number, driver's license number, nondriver governmental identification number, telephone number,

checking account number, savings account number, student identification number, employee or payroll number or electronic signature."

Brown asserts that US Bank engaged in identity theft through various communications, which she attached as exhibits to her amended complaint. Those communications do not, however, lead to a reasonable inference that US Bank possessed or used Brown's identifying information without her consent to further an unlawful purpose. The first two of the six communications set forth by Brown are letters from Bank of America to a Yvette Jean-Bart responding to correspondence from Bart and stating that it could not respond to her request because it could not identify the loan number associated with her correspondence. Those letters in no way lead to inference that US Bank engaged in identity theft. The third communication is a letter from Brown to National City Mortgage Co., EMC Mortgage Corporation, Bank of America, and Chase Home Finance, LLC, requesting information about her promissory note and mortgage. Again, in no way can it reasonably be inferred from this letter that US Bank engaged in identity theft.

The fourth communication is a letter from Chase to Brown dated October 24, 2014, responding to her request for mortgage assistance, stating that her application is incomplete, and listing forms and documents that she may need to provide to complete her application for mortgage assistance. Although this letter

listed additional information that Brown must provide if she wants further review of her request for mortgage assistance, it is a response to an inquiry from Brown. Even if Brown provided the additional information listed, it cannot reasonably be inferred that US Bank possessed the information without Brown's consent or for in improper purpose.  The fifth communication is a letter from Chase to Brown notifying Brown that the servicing of her mortgage will transfer from Chase to SLS, which in no way leads to inference of identity theft.

The sixth, and final, communication cited by Brown is a letter from SLS to Brown dated June 22, 2015, responding to her application for a "foreclosure prevention option," stating that it is unable to offer her a "[r]etention option at this time"; listing the options that it evaluated her for and the results of such evaluation; advising her how to request a second review; providing certain disclosures including a disclosure under the Fair Credit Reporting Act that it obtained and used her credit report and her credit score in making its decision; listing certain information relevant to her loan; and including a "Foreclosure Prevention Change of Intent Form," which includes boxes to check and additional data that would be needed if she "would like to be considered for other foreclosure prevention options." *Doc. 14-2* at 14-15 & 19-29.  Again, as a response to an inquiry from Brown, even if Brown provided the additional information listed, it cannot reasonably be inferred that US Bank possessed the information without Brown's

consent or for in improper purpose.  And to the extent that Brown is contending that US Bank used the information she supplied in the foreclosure case, this letter was after the final foreclosure judgment was already entered.

Moreover, that US Bank used Brown's personal information in connection with seeking foreclosure cannot be considered an improper purpose given that the state court determined that US Bank was entitled to foreclose on the property. Finally, although Brown alleges that US Bank "has or intends to" sell or trade her personal information to others and to file claims with the Internal Revenue Service, she has not alleged any facts to support such contention.  In sum, Brown has not alleged facts from which a reasonable finder of fact could conclude that US Bank committed identity theft.  Nor could she.  However much she disagrees with the foreclosure proceedings, a financial institution's pursuit of foreclosure is not identity theft.

In her brief in opposition to the motion to dismiss, Brown mentions, in passing, the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq*.  "FCRA, enacted in 1970, created a regulatory framework governing consumer credit reporting." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).  "That framework 'was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible

manner.' " *Id*. (quoting *Cortez v. Trans Union, LLC,* 617 F.3d 688, 706 (3d Cir.

2010) (quotation marks omitted)).  "Under FCRA, CRAs [consumer reporting

agencies] collect consumer credit data from 'furnishers,' such as banks and other

lenders, and organize that material into individualized credit reports, which are

used by commercial entities to assess a particular consumer's creditworthiness."

*Id*.  "FCRA imposes a variety of obligations on both furnishers and CRAs." *Id.*

FCRA defines a "consumer reporting agency" as "any person which, for

monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in

whole or in part in the practice of assembling or evaluating consumer credit

information or other information on consumers for the purpose of furnishing

consumer reports to third parties, and which uses any means or facility of interstate

commerce for the purpose of preparing or furnishing consumer reports." 15

U.S.C.A. § 1681a(f).  Brown does not allege facts that could support an inference

that US Bank is a consumer reporting agency.

Turning to the duties of a furnisher of information, under 15 U.S.C. § 1681s-

2(a), a "furnisher of information has a duty to provide accurate information" to a

credit reporting agency. *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355,

357 (3d Cir. 2011).  But "FCRA explicitly precludes private suits for failure to

comply with that statutory duty, 15 U.S.C. §1681s–2(c), and instead provides for

enforcement of that provision by federal and state officials, 15 U.S.C. § 1681s–2(d)." *Seamans*, 744 F.3d at 864.

Under 15 U.S.C. § 1681s–2(b), a furnisher of information has "a duty to conduct an investigation into the completeness and accuracy of the information furnished in certain circumstances." *SimmsParris*, 652 F.3d at 357.  "Although a private citizen my bring an action" for a violation of this section, "[t]he duties that are placed on furnishers of information by this subsection are implicated only '[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency.' " *Id*. at 358 (quoting 15 U.S.C. § 1681s–2(b)(1)).  That notice "must be given by a credit reporting agency, and cannot come directly from the consumer. *Id*.  In other words,

> a consumer must first alert the credit reporting agency that reported the allegedly erroneous information of a dispute.  It is then up to the reporting agency to inform the furnisher of information that there has been a dispute, thereby triggering the furnisher's duty to investigate.  It is only when the furnisher fails to undertake a reasonable investigation following such notice that it may become liable to a private litigant under § 1681s–2(b).

*Id*. at 359.  Here, Brown does not allege facts that implicate the FCRA.  She does not allege that she disputed information with a credit reporting agency or that a credit reporting agency notified US Bank of any such dispute.  Brown's "identify theft allegations simply do not fall within the ambit of the FCRA."*Jacques v.*

*Chase Bank USA, N.A.*, No. CV 15-548-RGA, 2016 WL 423770, at *7 (D. Del. Feb. 3, 2016).

In passing in her brief, Brown also mentions the Fair and Accurate Credit Transactions Act of 2003 (FACTA), which amended the FCRA. *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 373 (3d Cir. 2012). "FACTA requires financial institutions and creditors to implement a written program to detect, prevent, and mitigate identity theft in connection with certain "covered accounts." Steven C. Bennett, 2 Data Sec. & Privacy Law § 13:41 (2016). "FACTA also imposes several requirements for documenting fraudulent transactions resulting from identity theft." *Id*. Further, "[a]s part of an effort to prevent identity theft, FACTA prohibits merchants from printing certain credit and debit card information on receipts." *Long,* 671 F.3d at 373. While FACTA deals with identity theft, it cannot reasonably be construed to apply to Brown's claim that US Bank sought information from her in response to her requests for modifications of her mortgage. In sum, Brown has not alleged facts from which it can reasonably be inferred that US Bank violated FACTA.

In sum, Brown's allegations regarding the foreclosure process simply do not fall with the ambit of identity theft. A number of courts have rejected similar claims. *See, e.g.*, *Sanchez v. Bank of New York*, No. 215CV01249GMNGWF, 2016 WL 1449597, at *3 (D. Nev. Apr. 12, 2016) (concluding that allegations that the

45

defendants threatened to take the plaintiffs' home and money unless they provided

personal and financial information, that the defendants used public information in

order to deceive the plaintiffs into disclosing their personal information, and that

the defendants then used that information to sell the property at auction fails to

state an identity-theft claim upon which relief can be granted);  *Jacques* 2016 WL

423770, at *7 (concluding that allegations that the defendants used plaintiff's

public and private information in the mortgage-foreclosure process failed to state

an identity-theft claim upon which relief can be granted); *Turner v. Nationstar*

*Mortgage LLC*, No. 3:14-CV-1704-L, 2016 WL 302342, at *1 (N.D. Tex. Jan. 25,

2016) (adopting Report and Recommendation of Magistrate Judge recommending

dismissal of identity-theft claim based on allegations that the defendant obtained

information about the plaintiff from public documents, falsely represented that it

had a legal interest in his property, threatened to foreclose, and subsequently

induced him into applying for a loan modification, all in order to steal his personal

information); *Hasan v. Bank of Am., N.A.*, No. CV 15-3037(DSD/JJK), 2015 WL

7295745, at *3 (D. Minn. Nov. 18, 2015) (concluding that allegations that Bank of

America threatened to foreclose on the plaintiff's property unless he provided

personal and financial information, that Bank of America used public information

to deceive him into disclosing his personal information, which it then used to sell

his property at auction, and that Bank of America committed or intends to commit

tax fraud with his personal information and intends to sell his information to third parties fails to state a claim for identity theft), *aff'd*, No. 15-3903, 2016 WL 3611557, at *1 (8th Cir. July 6, 2016); *Bozetti v. US Bank, N.A.*, No. 3:15-CV-00278-RCJ, 2015 WL 5165877, at *4 (D. Nev. Sept. 3, 2015) (construing similar allegations as failing to state an identity theft claim upon which relief can be granted).  Accordingly, the amended complaint fails to state an identity-theft claim upon which relief can be granted.

## IV.  Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  Here, given that Brown's TILA claims are untimely and that her allegations simply do not fall within the ambit of identity theft, it would be futile to allow her to amend as to those claims.  But given the liberal policy in favor of allowing amendment and given that Brown is *pro se* and has apparently struggled to clearly articulate her claims, we recommend that Brown be given leave to file a second amended complaint to attempt, if appropriate, to state a FDCPA claim that falls within the statute of limitations and that states a claim upon which relief can be granted.

## V.  Recommendations.

Based on the foregoing, we recommend that the Court grant the defendant's motion (doc. 15) to dismiss the amended complaint and that it grant Brown limited leave to amend to attempt, if appropriate, to state a FDCPA claim that falls within the statute of limitations and that states a claim upon which relief can be granted.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 28th day of July, 2016.


<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
United States Magistrate Judge

48